UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY D. THOMPSON, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-1642 |
| | § | |
| CHASE BANK USA, N.A., CHASE BANKCARD | § | |
| SERVICES, INC., AND CHASE BUSINESS CARD | § | |
| SERVICES, | § | |
| *Defendants.* | § | |

## OPINION ON SUMMARY JUDGMENT

This diversity "breach of contract" case is before the court on the cross-motions for summary judgment of plaintiff Larry Thompson and defendants Chase Bank USA, Inc., Chase Bankcard Services, Inc., and Chase Business Card Services (collectively "Chase"). (Dkts. 30, 32.) For the reasons that follow, the court denies Thompson's motion and grants summary judgment in favor of Chase.[1]

## Background

In March 2005, Larry Thompson, a partner in a local law firm, transferred a balance of $9,800 onto his Chase credit card to take advantage of Chase's promotional offer of a 0% interest rate on balance transfers for six months. All was well until six months later when the interest rate on Thompson's card reverted to its normal 22.9%. Several more months passed before Thompson discovered the

---

[1] The parties have consented to jurisdiction before this magistrate judge for all proceedings, including final judgment. (Dkt. 15.)

rate increase and learned firsthand that the miracle of compound interest can also be a curse.

On December 17, 2005, Thompson wrote Chase an angry letter in which he purported to change the terms of the credit card agreement. Thompson proposed that if he ever overpaid his balance, Chase would be obligated to refund his overpayment with 22.9% interest within ten days. If Chase did not, he would charge Chase a late fee of $39, doubling every ten days, until Chase refunded his money at 22.9% interest. Thompson gave Chase ten days to object to the new terms before they went into effect.

Perhaps Chase interpreted Thompson's letter as satire rather than as a serious business proposal. Whatever its reasons, Chase did not reply.

That same month, Chase mailed Thompson (and all of its other cardholders) a proposed amendment to the credit card agreement that modified several parts of its arbitration provision. As is standard industry practice, Chase gave its cardholders a set period of time to object to the proposed amendment before it automatically went into effect. Thompson did so. Chase responded to Thompson's objection, not by negotiating with him to reach mutually acceptable terms, but by promptly exercising its option to cancel Thompson's account.

Thereafter, Thompson overpaid his final balance by $81.97. Chase sent Thompson a check for the $81.97, but Thompson refused to cash it because Chase

2

did not include the assorted late fees and interest that it had supposedly agreed to pay.

Thompson waited several months for Chase to comply with the terms of their "agreement."  When it became clear that no money was forthcoming, he sued Chase for breach of contract in Texas state court.  By Thompson's reckoning, Chase's dilatoriness entitled him to over $1.2 million in damages.  Chase then removed the case to this federal court.

<u>Analysis</u>

Chase first contends that Delaware law, which the credit card agreement expressly provides for, forbids cardholders from unilaterally changing the terms of a credit card agreement.

Chase is incorrect.  The Delaware law it cites—§ 952 of Title 5 of the Delaware Code—merely grants credit card companies the power to unilaterally change credit card agreements; it does not simultaneously prevent cardholders from doing the same thing. *See* DEL. CODE ANN., tit 5 § 952(a) (2007) ("Unless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect . . . .").  Likewise, the cases Chase cites do not hold that cardholders cannot unilaterally change the terms of credit card agreements; instead, they note only that § 952 grants credit card companies that power.  *See, e.g*, *Edelist v. MBNA Am. Bank*, 790

3

A.2d 1249, 1257-58 (Del. Super Ct. 2001).

What prevents cardholders like Thompson from unilaterally changing credit card agreements, as Chase correctly points out in its second argument, is Delaware's common law of contracts. In Delaware, as in presumably every other state, modifications to an agreement can occur only with the consent of both parties and consideration, i.e. "a benefit to the promiser or a detriment to the promisee." *First Mortgage Co. of Pa. v. Fed. Leasing Corp.*, 456 A.2d 794, 795-96 (Del. 1982); *De Cecchis v. Evers*, 174 A.2d 463, 464 (Del. Super Ct. 1961). Here, consideration did not exist because Thompson's proposed terms neither imposed any detriment on him nor conferred any benefit on Chase.[2] Additionally, consent did not exist because Chase did not affirmatively accept the proposed terms and none of the narrow circumstances in which silence can constitute acceptance were present.[3] Thompson's proposed amendment therefore could not—and did

---

[2] The only possible detriment would be Thompson's continuing obligation to make the minimum payments on his credit card balance every month. But Delaware courts reject the notion, as presumably courts in all states do, that a pre-existing duty can be consideration. *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232 (Del. Ch. 2000) ("Past consideration, as opposed to true consideration, however, cannot form the basis for a binding contract. A party cannot rely on a pre-existing duty as his legal detriment in an attempt to formulate a contract.")

[3] Delaware courts follow § 69 of the Restatement (Second) of Contracts (1981), which prohibits acceptance by silence unless: (1) the "offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation," (2) "the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer," or (3) "because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept." *See*

4

not—become effective.

Thompson argues that Delaware law does not govern his credit card agreement with Chase, notwithstanding the agreement's express choice-of-law provision.  But even if the choice-of-law provision were somehow invalid and Texas law governed Thompson's case instead, he would still lose for the same reasons.  Like Delaware law, Texas law permits contracts to be modified only through consideration and the consent of the parties. *See, e.g.*, *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986).  And Texas law's understanding of consideration and consent by silence is the same as Delaware's.  *See, e.g.*, *Roark v. Stallworth Oil & Gas Co.*, 813 S.W.2d 492, 496 (Tex. 1991) (consideration "consists of either a benefit to the promisor or a detriment to the promisee"); *Lone Star Steel v. Scott*, 759 S.W.2d 144, 153 (Tex. App. 1988) (a pre-existing duty cannot be consideration); *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 26 (Tex. App. 2005) (following the Second Restatement's analysis to determine when silence can constitute acceptance).

The court can understand how a pro se layman, unaware of the basic contract principles just described, might have filed this lawsuit.  But Thompson,

---

*Brittingham v. Bd. of Adjustment of City of Rehoboth Beach*, No. Civ.A. 03A-08-002, 2005 WL 170690, at *5 (Del. Super Ct. Jan. 14, 2005); *Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors*, 768 A.2d 983, 991 (Del. Super Ct. 2000).

a practicing lawyer, should have known better.  His failure to point to *any* law or case to support his claim against Chase—whether in Texas, Delaware, or any other state—reflects poorly on both himself and his profession.

<u>Conclusion</u>

The court sympathizes with Thompson in one respect.  It is seemingly unfair for Delaware law to give credit card companies like Chase the right to unilaterally amend credit card agreements while simultaneously denying cardholders the same right.  But unfairness is not a cause of action.  If Thompson wants the law to be changed, he should direct his efforts to the legislative branch instead of the courts.

For the foregoing reasons, Chase's motion for summary judgment is granted.  The court will issue a separate final judgment.

Signed at Houston, Texas on February 5, 2009.


Stephen Wm Smith
United States Magistrate Judge